Kenneth A. RAMSEY, and Judy L. Ramsey, Appellants,

v.

John P. LEWIS, Appellee.

No. 08–93–00420–CV.

Court of Appeals of Texas, El Paso.

April 7, 1994.

Rehearing Overruled May 4, 1994.

Mike Milligan, El Paso, TX, for appellants.

Fred J. Morton, El Paso, TX, for appellee.

Before BARAJAS, C.J., and KOEHLER and McCOLLUM, JJ.

## OPINION

KOEHLER, Justice.

The question presented in this appeal is whether the trial court in denying Appellants' application for a temporary injunction on the ground that the Appellants had an adequate remedy at law, abused its discretion by improperly imposing on Appellants the burden of proving the inadequacy of the legal remedy. The Appellants had applied for a temporary injunction to restrain and enjoin Appellee from constructing a duplex residence on property which adjoins Appel-

lants' property and which would obstruct Appellants' view of downtown El Paso in violation of an alleged restrictive covenant. We affirm the order denying the temporary injunction.

## RELEVANT FACTS

In March 1988, John P. Lewis (Lewis), Appellee, joined by his former wife, Rose M. Lewis, sold and conveyed by warranty deed one-half of a duplex residence located at 1805 Gurss Place, El Paso, Texas to Kenneth A. Ramsey and Judy L. Ramsey (Ramseys), Appellants. At the same time, the parties entered into a "Duplex Agreement" which obligated the owners of duplexes located on a multiple lot area in the Richmar Unit 7 Addition, owned initially by Lewis, not to "do or permit to be done any act which would tend to depreciate the value of his dwelling unit, the duplex of which it is a part, *or any duplex situated on the above described property*." [Emphasis added]. At the time they acquired the property, Ramseys had an unrestricted view of the downtown El Paso skyline.

Ramseys allege that at the time they bought their duplex unit, Lewis had put out or caused to be put out promotional material touting the duplex as having a "magnificent view of downtown skyline."[1] They also allege that about six months after acquiring their duplex, they had been assured by Lewis that he planned to build a one story, single family unit on the vacant lot immediately adjacent to their duplex so as not to obstruct their view. In 1993, Lewis began building another duplex residence on the lot in question.[2] It soon became apparent from the construction in progress, however, that the high peaked roof of the new duplex would effectively restrict or block out Appellants' view of downtown El Paso. Shortly thereafter, they filed this lawsuit for a temporary restraining order and for temporary and permanent injunctive relief and attorneys' fees,

alleging that Lewis by constructing the residence on the adjoining lot which would restrict their "magnificent view of [the] downtown skyline," was depreciating the value of their dwelling unit in violation of both express and implied restrictive covenants of the Duplex Agreement and that they had no adequate remedy at law.

The trial court granted the temporary restraining order but following a hearing, denied Ramseys' request for a temporary injunction, specifically finding in its order that the Ramseys have an adequate remedy at law for damages. It is from that order that the Ramseys bring this appeal asserting in a single point of error that the trial court abused its discretion by improperly imposing on them in a case involving enforcement of restrictive covenants the burden of proving inadequacy of money damages.

## ABUSE OF DISCRETION

The only question before the trial court in a temporary injunction hearing is whether the applicants, the Ramseys, are entitled to preservation of the *status quo* of the subject matter of the suit pending trial on the merits. *Iranian Muslim Organization v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981). The issue on appeal is whether the trial court abused its discretion in granting or denying the temporary injunction. *Iranian Muslim,* 615 S.W.2d at 208. A trial judge has broad discretion to grant or deny an application when the pleadings and the evidence show a probable right of recovery in the applicants and a probable injury to them if the temporary injunction is not granted. *Sun Oil Company v. Whitaker,* 424 S.W.2d 216, 218 (Tex.1968); *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (1961). A necessary corollary of that rule is that the trial court abuses its discretion if it grants a temporary injunction when the evidence fails to provide a reasonable basis for

1. The Ramseys did not, however, specifically allege that they had relied on the promotional material, including the "magnificent view" claim, in buying their duplex unit.

2. Prior to commencing construction, Lewis wrote to the Ramseys advising them that he planned to build a duplex on the vacant lot below

their property, and that the new duplex would be a one-story unit closest to their duplex and a two-story unit on the side of the duplex farthest from their duplex. Lewis invited the Ramseys to see the duplex plans at his house, which the Ramseys never did do.

concluding that the applicants have a probable right of recovery. *Sun Oil,* 424 S.W.2d at 218; *Camp,* 348 S.W.2d at 519. We may reverse the trial court's decision only if it has clearly abused its discretion. *Sun Oil,* 424 S.W.2d at 218; *W.C. LaRock v. Enabnit,* 812 S.W.2d 670, 671 (Tex.App.—El Paso 1991, no writ); *LeFaucheur v. Williams,* 807 S.W.2d 20, 22 (Tex.App.—Austin 1991, no writ). A trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Another way of stating the test is whether the act was arbitrary or unreasonable. *Downer,* 701 S.W.2d at 242. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242.

### *ADEQUACY OF REMEDY AT LAW*

 Although the Ramseys alleged in their petition that they "have no adequate remedy at law" and that money damages "would be manifestly inadequate," it is their position on appeal that under Tex.Civ.Prac. & Rem.Code Ann. § 65.011[3] and a number of court decisions,[4] a showing of inadequacy of a remedy at law is not necessary when a party seeks to enjoin the breach of a restrictive covenant and thus, the trial court abused its discretion in denying them a temporary injunction on the basis that they have an adequate remedy at law. Although we agree with this principle of law, this does not resolve the matter. The real issue is whether the Ramseys' evidence demonstrated a reasonable basis for concluding that they have a probable right to a permanent injunction. This would depend, in turn, on whether the evidence demonstrated a reasonable basis for claiming that the Duplex Agreement included an implied restrictive covenant which in effect guaranteed the Ramseys an unobstructed view of the downtown El Paso skyline for at least the life of the agreement.

### *DEMONSTRATION OF PROBABLE RIGHT TO A PERMANENT INJUNCTION*

 Our review of the pleadings, evidence, and argument of counsel lead us to find that the trial court could have concluded therefrom that the Ramseys failed to demonstrate a probable right to a permanent injunction based on an implied covenant of unobstructed view of downtown El Paso for the following reasons. First, the Duplex Agreement is a complete and unambiguous agreement and its interpretation is therefore for the court as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *First City Nat'l Bank of Midland v. Concord Oil Co.,* 808 S.W.2d 133, 137 (Tex.App.—El Paso 1991, no writ). Second, from its context with the paragraph of which it is a part and the remainder of the agreement, it is clear that the last sentence in paragraph III[5] refers to any act which an owner may do in connection with his or her own existing duplex, not to what kind of dwelling someone might build on an adjoining vacant lot that might somehow adversely affect the values of the other duplexes. Of course, the person who would build a residence on a vacant lot subject to the Duplex Agreement would have to comply with the building code and zoning laws but could not be required to observe some implied covenant not to obstruct his neighbor's view. Third, because an express or implied covenant not to obstruct a property owner's view would in effect create an negative easement, both the covenant running with the land and the easement would be interests in real estate and involve an agreement that could not be performed within one year.

---

3. Section 65.011 provides in relevant part:

 A writ of injunction may be granted if:

 . . . . .

 (5) irreparable injury to real or personal property is threatened, irrespective of any remedy at law. Tex.Civ.Prac. & Rem.Code Ann. § 65.011 (Vernon 1986).

4. *E.g., Protestant Episcopal Church Council v. McKinney,* 339 S.W.2d 400 (Tex.Civ.App.—Eastland 1960, writ ref'd).

5. "No owner shall do or permit to be done any act which would tend to depreciate the value of his dwelling unit, the duplex of which it is a part, or any duplex situated on the above described property."

Such interests would therefore be subject to the statute of frauds and could only be established by written agreement, not by parol evidence. *Miller v. Babb,* 263 S.W. 253, 254 (Tex.Comm'n App.1924, holding approved); *Fleming v. Adams,* 392 S.W.2d 491, 495 (Tex. Civ.App.—Houston 1965, writ ref'd n.r.e.); *Keith v. Seymour,* 335 S.W.2d 862, 869 (Tex. Civ.App.—Houston 1960, writ ref'd n.r.e.); Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1987). Fourth, although one of the written promotions (prepared by the realtor) indicated as an additional feature of 1805 Gurss Place: "Balcony with terra cotta flooring, wood rail and magnificent view of city skyline," none of the material made or implied any promise with regard to an obstructed view.[6] In their pleadings and argument, Ramseys assert that Lewis had a general scheme or plan of development which implicitly included the restrictive covenant of unobstructed view. Texas recognizes that restrictive covenants may be created as an equitable servitude by a general plan or scheme of development. *Selected Lands Corp. v. Speich,* 702 S.W.2d 197, 198–99 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Giles v. Cardenas,* 697 S.W.2d 422, 427 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.); *Lehmann v. Wallace,* 510 S.W.2d 675, 680 (Tex.Civ.App.—San Antonio, 1974, writ ref'd n.r.e.); *Collum v. Neuhoff,* 507 S.W.2d 920, 922 (Tex.Civ.App.—Dallas 1974, no writ). This kind of restrictive covenant does not run with the land but may be enforced against subsequent purchasers who took with notice but did not themselves enter into an agreement acknowledging that they were bound by covenants running with the land. *Selected Lands,* 702 S.W.2d at 199; *Collum,* 507 S.W.2d at 922–23. Covenants based on a general plan or scheme are not applicable to the present situation for several reasons. First, the Ramseys as purchasers are seeking to enforce an implied covenant against Lewis, the seller (both of whom had entered into the agreement creating covenants running with the land), not against some subsequent purchaser who took with notice but

was not a signatory to the agreement. Second, none of the evidence supports Ramseys' allegation that Lewis had a general scheme or plan "for each unit in the development to have a 'magnificent view of downtown skyline.'" The promotional advertisements were limited in their application to the duplex at 1805–07 Gurss Place bought by Ramseys and another party. Thus, a guaranteed magnificent view was not, and could not reasonably have been under the evidence, part of a general plan for development of all of the duplex sites.

We conclude that the trial court did not abuse its discretion in denying the temporary injunction. Ramseys' point of error is overruled and judgment of the trial court is affirmed.

---

6. Some of the promotional advertisements did not limit the magnificent view to the balcony and therefore it could just as easily be argued that the purchasers were being promised an unobstructed view from ground level, which would mean that nothing of consequence could be built on the adjoining lot.