Opinion issued October 14, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00349-CV

———————————

Eten, Inc., Center
for the Advancement of Process Technology, Inc., Herbert W. Fortson, III,
Raymond R. Wuertz, Joanna Kile, Merv W. Treigle, Jr., John V. Dees, III, and
Steve Ames, Appellants

V.

College of the Mainland, Appellee



 



 

On
Appeal from the 122nd District Court

Galveston
County, Texas



Trial Court Case No. 09CV1379

 



 

MEMORANDUM OPINION

Appellants, ETEN, Inc., Center for the
Advancement of Process Technology, Inc., Herbert W. Fortson, III, Raymond R.
Wuertz, Joanna Kile, Merv W. Treigle, Jr., John V. Dees, III, and Steve Ames,
appeal the trial court’s granting of Appellee College of the Mainland’s
application for temporary injunction.  In
three points of error, Appellants argue that the trial court abused its
discretion in granting the temporary injunction.

We affirm as modified.

                                                                                                                                                                
Background

Plaintiff in the current suit is College of the Mainland,
a public college located principally in Galveston County, Texas.  In 2002, College of the Mainland applied for
and received several National Science Foundation grants and, as a result,
established a department in the college known as Center for the Advancement of
Process Technology (the “Center”). 
College of the Mainland appointed Joanna Kile as the director of the
Center.  She held that position until her
contract was not renewed in 2007.

In January 2006, Kile, along with Herbert W. Fortson, III and
Merv W. Treigle, Jr. formed a
non-profit corporation known as Center for the Advancement of Process
Technology, Inc. (“CAPT, Inc.”). 
Management of CAPT, Inc. was vested in the board of directors, referred
to by the company as its steering committee. 
Kile, Fortson, and Triegle were appointed as CAPT, Inc.’s steering
committee.  Kile was appointed as its
president.  CAPT, Inc. serves as the
organizational body for nine alliances around the country that are related to
the petrochemical industry.  CAPT, Inc.
alleges that these various alliances provided technical expertise for the
creation of various educational materials related to process technology.  Process technology relates to the industry of
petrochemical technology.  College of the
Mainland alleges that it developed these materials through its employees and
various contractors.

It is undisputed by the parties that, as a result of the
National Science Foundation grants, certain copyrighted materials were
created.  What became disputed was who
had ownership of those copyrights, College of the Mainland, CAPT, Inc., or
both.  

In 2008, College of the Mainland filed suit against CAPT,
Inc. (the “First Lawsuit”).  Relatively
early in the litigation of the First Lawsuit, the trial court ordered the
parties to mediation.  Mediation began in
September 2008.  In May 2009, the parties
fully executed a settlement agreement. 
As a result of this settlement, the First Lawsuit was dismissed with
prejudice.

A little more than one month prior to the execution of the
settlement agreement, Kile and Triegle, along with John V. Dees, III, created
ETEN, Inc.  Fortson was its
incorporator.  ETEN was formed as a
non-profit corporation.  

Five days after ETEN was formed, CAPT, Inc. entered into a
copyright license agreement with ETEN. 
Under the terms of the copyright license agreement, CAPT, Inc.
represented that it was a joint owner of an undivided interest in certain
copyrighted works iterated in an attached exhibit.  CAPT, Inc. then granted to ETEN “a paid up
and world-wide non-exclusive, royalty-free licensee to make, use, and sell
copies of the Licensed Works, and to make, use, and sell derivative works based
on one or more of the Licensed Works for an irrevocable period of fifteen (15)
years.”  The consideration for this license
was a one-time fee of $10.

The settlement agreement was executed a little more than
one month after the copyright license agreement was executed.  Under the terms of the agreement, CAPT, Inc.
and College of the Mainland became joint owners with undivided interests in the
copyrighted materials except for copyrighted materials developed under the
current grant.  The parties agreed that
the copyrighted materials developed under the current grant would be owned exclusively
by College of the Mainland until the expiration of the grant, at which point
those materials would be owned jointly by CAPT, Inc. and College of the
Mainland.

CAPT, Inc. also agreed to create a “combined CAPT
organization” by joining its operations with College of the Mainland’s Center.  Thereafter, CAPT, Inc. would be “a
direct-support, not-for-profit, 501(c)(3) organization housed at the
College.”  In order to effectuate this
change, CAPT, Inc. agreed to reorganize its board of directors—named under the articles
of incorporation as its “steering committee”—to include nine members from
process technology alliances, two members appointed by College of the Mainland,
two from the academic community outside of College of the Mainland, and “two
from the industry as identified by the Steering Committee after consultation
with the College President or designee.” 
CAPT, Inc. agreed to amend its bylaws and articles of incorporation to
conform with the settlement agreement.

The parties also agreed that the chair of CAPT, Inc.’s
steering committee and the president of College of the Mainland, or his
designee, would “meet on a regular basis to discuss the combined CAPT
organization and concerns of the Steering Committee and of the College.”

Finally, the parties agreed that Joanna Kile would not be
affiliated with the combined CAPT organization in any manner.

As of the date of the temporary injunction hearing, the
combined CAPT organization had not been formed. 
Emails were exchanged primarily between Jack Berry, the current director
of operations for College of the Mainland’s Center, and Steve Ames, the local
representative for CAPT, Inc.  They also
met on certain occasions.  College of the
Mainland asked that certain things be turned over to them, including CAPT,
Inc.’s bank account information, website access, and mailbox key, but CAPT,
Inc. refused.

Some time after the settlement agreement was signed,
College of the Mainland learned of ETEN’s existence as well as the licensing
agreement.  College of the Mainland filed
suit on August 5, 2010, against the Defendants, alleging breach of contract,
breach of fiduciary duty, tortious interference with existing contract,
tortious interference with prospective relations, unfair competition by
misappropriation, fraudulent inducement, and violation of the Theft Liability
Act.  The trial court held a hearing on
College of the Mainland’s application for a temporary injunction on December
17, 2009.  Due to the length of the
testimony of the witnesses, the hearing had to be continued on another day,
January 27, 2010.  The trial court issued
its temporary injunction on April 8, 2010. 


The injunction (1) enjoined the defendants from “directly
or indirectly using, selling, copying, distributing or otherwise conveying the
process technology products to which College of the Mainland asserts ownership
(‘Products at Issue’) including” all of the works listed in CAPT, Inc.’s
copyright license agreement with ETEN; (2) enjoined the defendants from “diverting
and/or expending any and all current or future revenues generated by the use,
sale, copying, distribution, or any other conveyance of the Products at Issue”;
(3) ordered the defendants to “transfer any and all current and future revenue
generated by the sale of the Products at Issue to the College of the Mainland
immediately or within 5 business days of their receipt of such revenues”; and
(4) enjoined the defendants from “selling, licensing, or transferring any and
all intellectual property rights pertaining to the Products at Issue.”  

Defendants brought this appeal arguing that College of the
Mainland failed to establish (1) that it had a probable right to any relief;
(2) that the claimed injuries were imminent; and (3) that College of the
Mainland failed to show that it owned or developed any of the products that
Defendants were enjoined from using.

                                                                                                          
Standard of Review & Applicable Law

A temporary injunction is an extraordinary remedy that
does not issue unless the party seeking relief pleads and proves three specific
elements: (1) a cause of action, (2) a probable right to the relief sought, and
(3) a probable, imminent, and irreparable injury in the interim.  Butnaru v. Ford Motor Co., 84 S.W.3d 198,
204 (Tex. 2002).  The sole issue
presented to a trial court at a temporary injunction hearing is whether the
applicant is entitled to preserve the status quo pending trial on the
merits.  Id.; Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978).  The
status quo is defined as the last, actual, peaceable, non-contested status that
preceded the pending controversy.  In re Newton, 146 S.W.3d 648, 651 (Tex. 2004).

On appeal, the scope of review
is limited to the validity of the temporary injunction order.  See Walling v. Metcalfe, 863 S.W.2d
56, 58 (Tex. 1993).  We do not review the
merits of the underlying case.  Davis,
571 S.W.2d at 861.  Instead, we determine
whether there has been an abuse of discretion by the trial court in granting or
denying the relief.  Id. at
862.  In making this determination, we
may not substitute our judgment for that of the trial court unless its decision
was so arbitrary that it exceeded the bounds of reasonableness.  See Butnaru, 84 S.W.3d at 204.  A trial court abuses its discretion in
granting or denying a temporary injunction when it misapplies the law to the
established facts.  See State
v. Sw. Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).  Given the abuse-of-discretion standard, we
review the evidence submitted to the trial court in the light most favorable to
the court’s ruling, draw all legitimate inferences from the evidence, and defer
to the trial court’s resolution of conflicting evidence.  See Davis, 571 S.W.2d at 862; CRC-Evans
Pipeline, Int’l, Inc. v. Myers, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st
Dist.] 1996, no pet.).

                                                                                                                                        
Probable Right to Relief

Defendants argue that the trial court abused its
discretion in granting the application for the temporary injunction by claiming
that College of the Mainland failed to establish that it had a probable right
to recovery.  To show a probable right of
recovery, an applicant need not establish that it will finally prevail in the
litigation, but it must, at the very least, present some evidence that, under
the applicable rules of law, tends to support its cause of action.  Camp v. Shannon, 348 S.W.2d 517, 519
(Tex. 1961); see IAC, Ltd. v. Bell Helicopter Textron, Inc., 160
S.W.3d 191, 197 (Tex. App.—Fort Worth 2005, no pet.).  

In its breach of contract claim, College of the Mainland
alleged that CAPT, Inc. breached the settlement agreement by “1) failing and
refusing to take material steps towards combining its operations with [College
of the Mainland]; 2) failing to amend its bylaws and articles of incorporation
to conform to the Settlement Agreement; and 3) creating an affiliation between itself
and Defendant Kile by attempting to license [College of the Mainland]’s
products to ETEN, Inc.”  The essential
elements of a breach of contract claim are: (1) the existence of a valid
contract; (2) performance or tendered performance by the plaintiff; (3) breach
of contract by the defendant; and (4) damages sustained as a result of the
breach. Williams v. Unifund CCR Partners
Assignee of Citibank, 264 S.W.3d 231, 235–36 (Tex. App.—Houston [1st Dist.]
2008, no pet.).

In its fraud in the inducement claim, College of the
Mainland alleged that Fortson and Wuertz fraudulently induced it into entering
into the settlement agreement with CAPT, Inc. 
Specifically, College of the Mainland argues that its fraudulent inducement
claim is based on the representation in the settlement agreement that Kile
would not be affiliated with the combined CAPT organization in any manner.  To prevail on a fraud claim, a plaintiff must
prove that (1) the defendant made a material representation that was false; (2)
it knew the representation was false or made it recklessly as a positive
assertion without any knowledge of its truth; (3) it intended to induce the
plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the
representation and thereby suffered injury. 
Coastal Bank SSB v. Chase Bank of
Tex., N.A., 135 S.W.3d 840, 843 (Tex. App.—Houston [1st Dist.] 2004, no
pet.).

In the settlement agreement, both parties specifically
represented to each other that Joanna Kile would not be affiliated with the
combined CAPT organization in any manner—an organization that would be formed
by joining CAPT, Inc.’s operations with College of the Mainland’s Center.  Seven months after protracted negotiations on
settlement of the First Lawsuit and barely more than one month before the final
draft of the settlement agreement was executed, two of the founders of CAPT,
Inc.—including Joanne Kile—formed a new company: ETEN.  Days later, CAPT, Inc. granted to ETEN “a
paid up and world-wide non-exclusive, royalty-free licensee to make, use, and
sell copies of the Licensed Works, and to make, use, and sell derivative works
based on one or more of the Licensed Works for an irrevocable period of fifteen
(15) years.”  The consideration for this
license was a one-time fee of $10.  It
would not be an abuse of discretion for the trial court to determine that this
is some evidence of an association with Joanna Kile in violation of the terms
of the settlement agreement, thus constituting some evidence to support a claim
for fraudulent inducement to enter into the settlement agreement as well as an
anticipatory breach of the settlement agreement.

Furthermore, Berry testified that at least one of the
copyrighted materials licensed to ETEN was developed under the current National
Science Foundation grant.  Under the
terms of the settlement agreement, CAPT, Inc. had no interest in any materials
created under the current grant until after the grant expired.  This evidence further supports College of the
Mainland’s claims regarding breach of the settlement agreement and a fraudulent
inducement to enter into the settlement agreement.

Defendants argue that, as a matter of law, reliance on
representations made in an adversarial context is not justified.  See
Coastal Bank, 135 S.W.3d at 843. 
However, the specific representation—that Joanna Kile would not be
affiliated with the combined CAPT organization in any manner—was a term of the
settlement agreement.  Both CAPT, Inc.
and College of the Mainland agreed in the settlement agreement that the
agreement was signed without “reliance upon any statement, promise, or
representation not recited in the
Agreement.”  (Emphasis added.)  The trial court reasonably could have
concluded that the implication of this statement was that they were relying on
representations made in the settlement agreement.

We overrule appellants’ first point of error.[1]

                                                                                                                                                    
Irreparable Injury

Defendants argue that College of the Mainland failed to
establish that it will suffer a probable injury.  Probable injury includes elements of imminent
harm, irreparable injury and no adequate remedy at law for damages.  T-N-T
Motorsports, Inc. v. Hennessey Motorsports, Inc., 965 S.W.2d 18, 24 (Tex.
App.—Houston [1st Dist.] 1998, no pet.)  To
establish that there is no adequate remedy at law for its damages, the
applicant must show that it “cannot be adequately compensated in damages or . . .
the damages cannot be measured by any certain pecuniary standard.”  Ahmed v.
Shimi Ventures, L.P., 99 S.W.3d 682, 692 (Tex. App.—Houston [1st Dist.]
2003, no pet.) (quoting Butnaru, 84
S.W.3d at 204).  A remedy is adequate if
it gives complete, final, and equal relief. 
Henderson v. KRTS, Inc., 822
S.W.2d 769, 773 (Tex. App.—Houston [1st Dist.] 1992, no writ).

In the temporary injunction order, the trial court found
that there was a showing of a probable injury:

[T]o wit, the continued diversion and misuse of income
and the unauthorized exploitation of Plaintiff’s intellectual property by
Defendants.  Plaintiff has further shown
that the injury is irreparable because Defendants’ conduct interferes with the
ability of Plaintiff’s Center . . . to become a self-sustainable
process technology center.  Plaintiff has
further shown that there is no adequate remedy at law to rectify its injury.

Lisa Templer, College of the Mainland’s vice president for
financial services, testified that College of the Mainland would suffer injury
with ETEN publishing the same copyrighted materials as College of the
Mainland.  The result of these competing
sales would be loss of revenue that would interfere with College of the
Mainland’s goal for self-sustainability for the Center.  Templer testified that this in turn could
impact College of the Mainland’s ability to obtain future National Science
Foundation grants as well as cause lay-offs at the college.

Jack Berry, director for College of the Mainland’s Center,
testified that ETEN’s publishing the same copyrighted materials as College of
the Mainland was a loss of revenue for College of the Mainland.  In addition, he testified that publishing the
same material caused confusion “around who owns the material, who is the real [Center
for the Advancement of Process Technology], the real Center, [and] who serves
the [process technology] community on behalf of the grant at College of the
Mainland.”  Finally, Berry testified that
the copyrighted materials included examination material to qualify people for
various kinds of employment.  Two
entities publishing varying examinations would cause confusion as to who took
which exam and whether the examinees were in fact qualified.

We hold that the trial court did not abuse its discretion
in determining that there was some evidence that College of the Mainland
established it would suffer a probable injury without the entry of the
temporary injunction.

We overrule Appellants’ second point of error.

                                                         
College of the Mainland’s Ownership of
Enumerated Materials

CAPT, Inc. argues there is no evidence that College of the
Mainland owns the items enumerated in the temporary injunction.  While CAPT, Inc.’s representative, Ames, was
testifying at the hearing, the following exchange took place:

Q.      So,
what did CAPT, Inc. do?

A.      CAPT,
Inc. gave a non-inclusive [sic] license to ETEN to also sell our process
technology copyrights that we had.

Q.      Did
CAPT, Inc. feel like they had the authority or the right to do that?

A.      Yes.
We’ve owned them for several years; so, we had that right.

The Court:
Just for purposes of my notes, the rights to the process technology that you
guys gave to ETEN, is that the one that’s co-owned with [College of the
Mainland] or something separate? Earlier you said that the ownership of those
things was co-owned, jointly owned with [College of the Mainland]. So, are we
talking about that or something separate?

The Witness: We’re talking about that. They had
rights to them that they get to sell to somebody and we have rights to them, as
well.

The Court: The same materials.

The Witness: Yes.

The only item enumerated in the injunction order that
is not listed in some manner in the license agreement between CAPT, Inc. and
ETEN is item 20: “Use of the ‘CAPT teardrop’ logo for commercial and
non-commercial purposes.”  There is no
reference to this logo anywhere else in the record.  Accordingly, there is no evidence that
College of the Mainland owns this logo or that CAPT, Inc. or any other
defendant should be enjoined from using it. 
CAPT, Inc. pre-existed this dispute and, even under the terms of the
settlement agreement, will continue to exist into the future.  To the degree that this logo is owned by
CAPT, Inc., there is no evidence in the record that CAPT, Inc. should be
required to refrain from using it.

We sustain Defendants’ third point of error as it relates
to item twenty in the temporary injunction order and overrule their point of error
as it relates to the remainder of the order.

                                                                                                                                                                   
Conclusion

We delete item 20 from the temporary injunction order and
affirm as modified.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of
Justices Keyes, Higley, and Bland.











[1]        Because we have determined that the trial court could have
determined that College of the Mainland established a probable right to relief
under these causes of action, we do not need to address the other causes of
action.  See Tex. R. App. P.
47.1.